1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK JAMES CARRIZOSA, JR., | CASE NO. 05CV1935 IEG (LSP) |
| Petitioner, | **ORDER (1) REJECTING IN PART PETITIONER'S OBJECTIONS, (2) ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (3) DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS, and (4) REQUESTING SUPPLEMENTAL BRIEFING ON PETITIONER'S EQUAL-PROTECTION CLAIM** |
| vs. | |
| JEANNE S. WOODFORD, | |
| Respondent. | [Doc. No. 35] |

Presently before the Court is Patrick James Carrizosa, Jr.'s ("petitioner") amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner claims the California Department of Corrections and Rehabilitation ("CDCR") wrongfully denied petitioner's request for conduct credits (a/k/a "behavioral credits") and limited petitioner to worktime credit equal to 15% of his sentence.

The matter was referred to United States Magistrate Judge Leo S. Papas, pursuant to 28 U.S.C. § 636(b)(1)(B).  On May 11, 2007, Magistrate Judge Papas issued a Report and Recommendation ("R&R"), concluding this Court should dismiss the petition on the merits.  On July 11, 2007, petitioner filed objections to the Report.  The Court has considered the R&R and

petitioner's objections.  With respect to petitioner's due process and estoppel claims, this Court (1)

adopts Magistrate Judge Papas's Report and (2) dismisses petitioner's § 2254 petition with

prejudice.[1]  With respect to petitioner's equal protection claim, the Court requests supplemental

briefing.

## BACKGROUND

On September 2, 2003, petitioner pled guilty in San Diego County Superior Court to

carjacking, auto theft, and hit-and-run with personal injury.  (Lodgment No. 2.)  By signing the

plea agreement, petitioner acknowledged that his attorney explained the a possible consequence of

the plea was a reduction in "conduct credits" to 15% of the sentence because petitioner pled guilty

to committing a violent felony.  (Lodgment No. 1, at 2.)  On December 14, 2004, petitioner filed

an administrative appeal, including a self-prepared "time credits waiver" attempting to obtain day-

for-day credits for his participation in the Inmate Work Training Incentive Program ("IWTIP").

(Answer, Exhibit 1.)  The CDCR rejected petitioner's proposed waiver and administrative appeal

on December 31, 2004.  (Id., Exhibit 2.)

Petitioner then filed a petition for writ of habeas corpus in San Diego County Superior

Court on February 18, 2005.  (Id.)  The Superior Court denied the petition by written order on

April 6, 2005.  (Lodgment No. 5.)  Petitioner next filed a petition for a writ of habeas corpus with

the California Supreme Court on April 1, 2005.  (Lodgment No. 8.)  The Supreme Court

summarily denied the petition on April 27, 2005.  (Lodgment No. 9.)

Petitioner later filed a petition for a writ of habeas corpus with the California Court of

Appeal on June 6, 2005.  (Lodgment No. 6.)  Despite the prior Supreme Court ruling, the Court of

Appeal denied the petition on the merits by written order on July 26, 2005.  (Lodgment No. 7.)

On November 23, 2005, petitioner filed a petition for a writ of habeas corpus in this Court,

pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.) On December 2, 2005, respondent moved to dismiss

the petition as untimely. (Doc. No. 5.) On July 28, 2006, this Court adopted Magistrate Judge

---

[1] "A certificate of appealability 'is not required when a state prisoner challenges an administrative decision regarding the execution of his sentence.'" Rosas v. Nielsen, 428 F.3d 1229, 1231 (9th Cir. 2005) (quoting White v. Lambert, 370 F.3d 1002, 1010 (9th Cir. 2004)).  Because petitioner challenges a decision made by CDCR (i.e., an administrative body) rather than a court, petitioner does not need a certificate of appealability from this Court. Id. at 1231-32.

1    Papas's report and recommendation and denied the motion to dismiss. (Doc. No. 22.)

2         Petitioner moved for leave to file an amended petition on August 30, 2006 (Doc. No. 23),

3    which the Court granted on September 8, 2006 (Doc. No. 24).  The amended petition claimed

4    petitioner (1) had a federally protected liberty interest in day-for-day credits earned while working

5    in IWTIP, (2) is entitled to day-for-day credits under principles of government or equitable

6    estoppel, and (3) was denied equal protection when CDCR awarded day-to-day credits to similarly

7    situated prisoners.

8         Respondent answered the petition on December 18, 2006. (Doc. No. 30.)  Petitioner filed a

9    traverse on January 16, 2007. (Doc. No. 34.) The magistrate judge issued the R&R on May 11,

10   2007.  (Doc. No. 35.) Petitioner filed objections to the R&R on July 11, 2007. (Doc. No. 38.)

11                                   **LEGAL STANDARD**

12        The Court may grant petitioner's section 2254 petition only if the Court determines that the

13   California Superior Court[2] decided petitioner's petition in a manner that was either "contrary to, or

14   involved an unreasonable application of, clearly established federal law, as determined by the

15   Supreme Court of the United States," or "based on an unreasonable determination of the facts in

16   light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d); Williams v.

17   Taylor, 529 U.S. 362, 403, 412-13 (2000).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews

18   de novo those portions of the Report to which petitioner objects.

19                                     **DISCUSSION**

20   **A.    Due Process**

21        A prisoner does not automatically have a constitutionally guaranteed liberty interest in

22   behavior credits for satisfactory behavior during incarceration.  Wolff v. McDonnell, 418 U.S.

23   539, 557 (1974); Carlo v. City of Chino, 105 F.3d 493, 497 (9th Cir. 1997).  A state may, however,

24   create a liberty interest in behavioral credits by provisions in state law (e.g., statutes or prison

25   regulations).  Superintendent v. Hill, 472 U.S. 445, 453 (1985); Toussaint v. McCarthy, 801 F.2d

26   _____

27        [2] Because the California Supreme Court rejected petitioner's petition for review without any
     analysis and reached its decision before the California Court of Appeal, this Court looks to the
     decision of the California Superior Court to determine whether the final "reasoned state judgment"
28   is contrary to, or unreasonably applies, U.S. Supreme Court precedent. Ylst v. Nunnemaker, 501 U.S.
     797, 803 (1991).

1080, 1094-95 (9th Cir. 1986).  Those liberty interests are limited to protecting "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995); Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996).  To determine whether California law gave petitioner a protectable liberty interest in behavioral credits, the Court looks for mandatory language in the applicable state laws.  Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 463 (1989); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  The magistrate judge reviewed the applicable state laws and concluded petitioner is ineligible for more credits than he has already received.  Petitioner objects, claiming those laws give him a protectable liberty interest in additional credits.

The magistrate judge began by reviewing California's release credits scheme.  While in pre-sentence custody, prisoners may obtain one-third credit for willingness to work and good conduct.[3]  Cal. Penal Code § 4019(b)-(c); People v. Philpot, 122 Cal. App. 4th 893, 907 (Cal. Ct. App. 2004).  The available credits in post-sentence custody vary, depending on the date the underlying offense was committed.  For crimes committed before 1983, inmates could obtain a one-third reduction in their sentence "for good behavior and participation."  Cal. Penal Code § 2931(a).  For crimes committed on or after January 1, 1983, prisoners could obtain a halftime reduction[4] "for performance in work assignments and performance in elementary, high school or vocational education programs."  Id. § 2933(a).  Inmates subject to the one-third reduction of § 2931 could become subject to the one-half reduction of § 2933 by signing a waiver.  Id. § 2934. Prisoners who signed such a waiver would retain only those behavioral credits "attributable to the portion of the sentence served . . . prior to the effective date of the waiver."  Id.  The CDCR has the discretion to determine the effective date of the waiver.  Id.  In some cases, once the inmate

---

[3] To be precise, § 4019 allows inmates to obtain, for every six-day period of presentence custody, one day of credit for not refusing to perform assigned labor and an additional day of credit for complying with rules and regulations.  For an inmate receiving all such worktime and good conduct credits, the total amount of presentence custody credit is computed by dividing the number of days spent in custody by four and rounding down.  This quotient is then multiplied by two and added to the number of days spent in custody.  Philpot, 122 Cal. App. 4th at 908.

[4] Such a reduction is also described as "day-for-day credits" because prisoners can earn credits for each day they participate in a qualifying program. (Resp. Memo. ISO Answer, at 7.)

signed the § 2934 waiver, the CDCR recalculated the § 2931 credits as if the prisoner had been

earning the § 2933 credits since the beginning of the sentence.  (See R&R, at 22 n.11.)  This

process is known as "auto-revesting."  (Id.)

In enacting § 2933, the legislature intended for inmates to serve their entire sentence,

except for worktime credits earned through work assignments or educational programs.  Cal. Penal

Code § 2933(a).  Furthermore, inmates who signed a § 2934 waiver "waived their right to behavior

or participation credits."  Cal. Code Regs. tit. 15, § 3043(c)(4).  Therefore, after § 2933 took

effect, the only inmates eligible for behavioral credits while serving their sentence were inmates

convicted of crimes committed before 1983 who did not sign § 2934 waivers.  Regardless of the

date of the underlying offense, prisoners continue to receive good conduct credits while in pre-

sentence custody.  Cal. Penal Code § 4019(c).

The magistrate judge further explained that California has a separate provision concerning

release credits for prisoners convicted of a "violent felony" that was committed on or after

September 21, 1994.  Pursuant to Penal Code § 2933.1(a), such an inmate, "[n]otwithstanding any

other law, . . . shall accrue no more than 15 percent of worktime credit."  Similarly,

"[n]otwithstanding Section 4019 or any other provision of law, the maximum credit that may be

earned [in pre-sentence custody] shall not exceed 15 percent of the actual period of

confinement[.]"  Id. § 2933.1(d).  The definition of "violent felony" includes carjacking, the

offense for which petitioner was convicted.  Id. § 667.5(c)(17).  Therefore, the magistrate judge

found that petitioner was subject to the provisions of § 2933.1 and ineligible for any worktime

credits in excess of 15% of his sentence.  (R&R, at 9.)  Furthermore, because petitioner is no

longer in pre-sentence custody, he is not entitled to further behavioral credits under § 4019.  (Id.)

Petitioner concedes that § 2933.1 limits him to 15% worktime credits but claims that two

other provisions of state law create a liberty interest in halftime credits.  First, petitioner relies on

Penal Code § 1191.3(a), which requires for all felony convictions that "[a]t the time of sentencing

. . . , the court shall make an oral statement that statutory law permits the award of conduct and

worktime credits up to one-third or one-half of the sentence that is imposed by the court[.]"

Although the transcript of petitioner's sentencing proceeding contains no such oral statement

1   (Lodgment No. 11), petitioner is not complaining about the absence of a statement.  Instead,

2   petitioner argues that § 1191.3(a) guarantees him halftime credit as a combination of worktime and

3   behavioral credits.  (Objections, at 3.)  Petitioner claims a due process interest in being able to

4   obtain the "balance"[5] of his halftime credits through good conduct.

5        The magistrate judge considered § 1191.3 and concluded that it did not create a protectable

6   liberty interest in release credits. Because the statute directs the sentencing court to explain that the

7   law "permits" an inmate to obtain credits "up to" half of the sentence, the magistrate judge

8   determined that the statute "informs an inmate that he <u>may</u> be eligible for credits ranging from 0%

9   to 50%, not that he is automatically entitled to 50%[.]" (R&R, at 11 (emphasis in the original).)

10  The reference to "conduct" credits in conjunction with "one-third" of the sentence simply confirms

11  what § 2931 already established: the availability of one-third credit for good behavior and

12  participation for prisoners convicted of a felony prior to 1983.  The magistrate judge found the

13  mere reference to "conduct" credits does not automatically make all inmates eligible for conduct

14  credits.

15       This Court finds the magistrate judge correctly interpreted § 1191.3 not to create a

16  protectable "liberty interest" in receiving any good conduct credits.  In addition to the reasons

17  stated by the magistrate judge, the Court finds § 1191.3 merely indicates the possible levels of

18  release credits that California law "permits" an inmate to obtain.  It contains no "substantive

19  predicates" to govern the CDCR's decision in awarding release credits, nor does it require a

20  particular outcome if any such predicates are satisfied.  <u>See</u> <u>Thompson</u>, 490 U.S. at 462-63

21  (discussing both substantive predicates and mandatory outcomes); <u>Valdez v. Rosenbaum</u>, 302 F.3d

22  1039, 1044 (9th Cir. 2002) (same).  To the contrary, § 1191.3 says the inmate may obtain release

23  credits equaling "up to one-third or one half"[6] of the sentence, thus creating a broad range of

24

25       [5] The "balance" is the remaining 35% of credits that petitioner cannot obtain through work or
    educational programs because of § 2933.1.  (<u>See</u> Am. Pet., at 8.)

26

27       [6] Although petitioner insists § 1191.3 entitles him to halftime credits, petitioner fails to address
    the statutory language indicating that a convicted felon could also be eligible for one-third release
    credits. In any case, the range of outcomes suggested by the "up to" language of § 1191.3 defeats

28  defendant's argument that the Penal Code contains "mandatory language" entitling him to halftime
    credits.

1    possible outcomes (including the 15% cap dictated by § 2933.1).

2         Second, petitioner relies on § 53130.4.2 of the Department of Corrections' Operations

3    Manual (2004 edition), which states, "[i]nmates sentenced to prison on non-life terms, whose

4    crimes are committed on or after 1-1-83, shall automatically be eligible to receive day-for-day

5    credits under the provisions of [Penal Code §] 2933."  Petitioner argues the language "shall

6    automatically" is sufficiently mandatory to put petitioner on notice that he can obtain daytime

7    credits under § 2933, even though his carjacking conviction subjects him to § 2933.1.  (Objections,

8    at 9.)

9         The magistrate judge reviewed the Operations Manual and concluded that it did not create

10   a protectable liberty interest in release credits.[7]  The magistrate judge began by explaining that

11   petitioner could not benefit from the Operations Manual provision because petitioner was not

12   subject to § 2933, but instead § 2933.1.  The magistrate judge further pointed to another clarifying

13   provision that limited the scope of the provision on which petitioner relies.  Specifically,

14   Operations Manual § 53130.4 explains, "[e]ligibility to earn day-for-day credits shall be

15   determined by the type of crime committed and the specific date on which the commitment offense

16   occurred."  Because one section of the Operations Manual conditioned eligibility for day-to-day

17   credits on the type and date of the offense, the magistrate judge refused to conclude that another

18   section of the manual entitled petitioner to halftime credits as a matter of due process.

19        This Court finds the magistrate judge correctly interpreted Operations Manual § 53130.4.2

20   not to create a protectable "liberty interest" in receiving any good conduct credits.  In addition to

21   the reasons stated by the magistrate judge, the Court finds that petitioner's argument would result

22   in an impermissible construction of Penal Code § 2933.  Petitioner recognizes that he can only

23   obtain worktime credits up to 15% of his sentence because he is a violent felon subject to §

24   2933.1.  Because the Operations Manual mentions the availability of day-to-day credits under §

25

26        [7] The magistrate judge correctly observed that mandatory language in a prison regulation is
     insufficient to create a protectable liberty interest. Sandin, 515 U.S. at 483-84. Therefore, petitioner's
27   argument also fails because it relies exclusively on the mandatory language of the Corrections Manual.
     Petitioner fails to show that any liberty interest created by the Operations Manual protects inmates
28   from "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Id. at
     484; accord Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

2933, petitioner essentially asks the Court to let him accrue good conduct credits under this statute. However, the only credits allowed under § 2933 are <u>worktime</u> credits for participation in work assignments or qualifying educational training programs.  The words "conduct" and "behavior" do not appear in the statute.  Awarding behavioral credits based on a statute limited in scope to worktime credits would exceed the scope of the statute.

Besides the conclusions of the R&R and the additional reasoning <u>supra</u>, the overarching reason for the failure of petitioner's due process argument is the plain language of § 2933.1. Subsections (a) and (c) both begin with the phrase, "[n]otwithstanding any other law".  Therefore, § 2933.1(a) unambiguously "limited to 15 percent the rate at which [a prisoner] could earn worktime credit as long as he [serves] the term for [a] violent offense," <u>In re Reeves</u>, 35 Cal. 4th 765, 769 (Cal. 2005), and limits pre-sentence good conduct credit to 15% of the period of confinement, <u>People v. Caceres</u>, 52 Cal. App. 4th 106, 111 (Cal. Ct. App. 1997).  Section 2933.1 governs petitioner's case because the California Penal Code includes carjacking within the definition of "violent felony".

Petitioner urges the Court to apply canons of construction to interpret § 2933.1 as limiting a prisoner's ability to earn worktime credits while imposing no limit on the ability to earn post-sentence behavioral credits.  While the plain language is indeed silent on the question of behavioral credits, extrinsic evidence makes clear the statute does not allow an inmate to accumulate such credits after placement in the custody of the Department of Corrections.  First, the overall statutory scheme contradicts the construction petitioner urges.  Section 2933.1 applies to offenses committed on or after its effective date, <u>i.e.</u>, September 21, 1994.  Prior to the enactment of § 2933.1, any inmate convicted for an offense committed in 1983 or later could obtain a halftime post-sentence reduction in sentence only by "performance in work assignments and . . . education programs."  Cal. Penal Code § 2933.  In other words, section 2933 "eliminat[ed] good behavior credits for defendants committing crimes on or after January 1, 1983 and substitut[ed] in their place only 'worktime' credits for participation in qualifying programs." <u>People v. Caruso</u>, 161 Cal. App. 3d 13, 19 (Cal. Ct. App. 1984).  Therefore, § 2933.1's silence on the question of behavioral credits makes perfect sense: all violent felons covered by § 2933.1 were

already ineligible for behavioral credits under § 2933.  Section 2933.1 further reduced the

worktime credits that violent felons could obtain and preempted any conflicting release credit

provisions in the Penal Code.  See Caceres, 52 Cal. App. 4th at 112-13 (holding that specific

statute on credit limits for violent felons prevails over statute governing credit limits for felons

generally).  And, if all this were not enough, the sponsor of the bill codified as § 2933.1 submitted

a letter of intent into the legislative record, which explained "the maximum reduction . . . from a

defendant's term of imprisonment imposed as a result of conviction of a violent felony . . . [is]

fifteen percent (15%)."  1993 Cal. Legis. Serv. Ch. 713 (A.B. 2716).  Because fifteen percent is

also the maximum amount of worktime credit a violent felon can accrue, § 2933.1 clearly

forecloses an inmate from obtaining behavioral credits after sentencing.[8]

 California law does not give petitioner, who committed a violent felony in 2003, a right to

obtain post-sentence behavioral credits.  To the contrary, California law expressly limits petitioner

to obtaining worktime credits equal to 15% of his sentence.  Because petitioner cannot accrue

behavioral credits while serving his sentence in state prison, the denial of such credits is not a

"restraint which . . . imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  Therefore, with respect to petitioner's

due process claim, the Court rejects petitioner's objections, adopts the R&R, and denies this claim

on the merits.

**B.**  **Estoppel**

 Petitioner spends the bulk of his objections arguing that provisions of California law give

him a protectable liberty interest in behavioral credits.  In the alternative, petitioner argues that,

even if he is not entitled to such credits under state law, the Court should estop respondent from

denying such credits under the doctrines of government and equitable estoppel.  Petitioner claims

---

[8] Petitioner claims, if § 2933.1 does not allow inmates to obtain postsentence behavioral credits, it effectively repeals § 1191.3, which directs the Court to mention at sentencing the availability of behavioral credits.  The provisions, however, do not conflict because § 1191.3 pertains to all convicted felons, regardless of the date of their offense.  Felons convicted of an offense committed before 1983 remain eligible for behavioral credits; therefore, they would be entitled to know about such credits at their sentencing.  Section 1191.3 is merely a general directive to the sentencing court; it does not convey any substantive rights to particular release credits.  Indeed, subsection (a) directs the sentencing court to explain further that other law enforcement entities (i.e., the sheriff and the Department of Corrections) actually calculate and award the credits.

1   that, whenever he was assigned work in the IWTIP, he received written promises that he would

2   obtain behavioral credits.  Furthermore, petitioner claims he was threatened with the loss of

3   behavioral credits if he violated prison rules and regulations and he actually lost behavioral credits

4   during his prison term.  Petitioner reasons that he cannot lose behavioral credits, unless respondent

5   has first awarded them.[9]

6        Petitioner objects that the magistrate judge failed to address his estoppel claim.

7   (Objections, at 18.)  To the extent petitioner based his argument on California equitable estoppel

8   principles, the magistrate judge properly declined to review the state court's denial of petitioner's

9   claim.  (See Memo. ISO Am. Pet, at 11-12 (discussing In re Monigold,[10] 205 Cal. App. 3d 1224

10  (Cal. Ct. App. 1988), and In re Diaz, 13 Cal. App. 4th 1755 (Cal. Ct. App. 1993)), & Traverse, at

11  24-26 (discussing same cases).)  Instead, the magistrate judge construed petitioner's argument as a

12  Contract Clause claim.  The magistrate judge rejected this claim because a court cannot enforce a

13  contract against a public agency "unless it appears the agency was authorized by the Constitution

14  or statute to incur the obligation[.]"  Miller v. Rowland, 999 F.2d 389, 392 (9th Cir. 1993) (internal

15  quotation omitted).  Applied to the facts, even if respondent contracted with petitioner for halftime

16  release credits, such a contract would be void and unenforceable because the Penal Code barred

17  petitioner from obtaining credits exceeding 15% of his sentence.[11]  (R&R, at 25.)

18        In addition to relying on state-law principles and the Contract Clause, petitioner asserts a

---

19

20   [9] Petitioner cites a statement in the declaration of Pamela Webster, case records manager in
the state prison where petitioner is incarcerated. Ms. Webster explained that petitioner receives a copy
of his legal status summary (LSS) sheet "anytime he receives a serious rule violation in which he
21   forfeits behavioral credits." (Webster Decla. ¶ 6 (emphasis added).)

22   [10] The magistrate judge considered and distinguished Monigold in his discussion of petitioner's
due process claim. (R&R, at 14-16.) Having denied petitioner's due process claim, the Court agrees
23   with the magistrate judge's analysis distinguishing Monigold.

24   However, the Court reads the petition and supporting memoranda to argue that Monigold and
its progeny support an equitable estoppel claim.  Furthermore, the opinions in Monigold and Diaz
25   discuss estoppel principles, and the phrase "due process" does not appear in either opinion. In any
event, these opinions decide questions of state law and, therefore, cannot support habeas relief.
26

27   [11] Petitioner objects to the magistrate judge's Contract Clause analysis because petitioner
believes there is statutory authority entitling him to halftime credits. Having established supra that
petitioner has no statutory entitlement to credits exceeding 15% of petitioner's sentence, much less
28   any post-sentence good conduct credits, the Court rejects petitioner's objections to the R&R's
Contract Clause analysis.

separate argument for equitable estoppel[12] which the R&R does not address.  The Court considers

this claim de novo and finds that it fails as a matter of law.  First, the Supreme Court has not yet

decided "whether an estoppel claim could ever succeed against the government."  Office of Pers.

Mgmt. v. Richmond, 496 U.S. 414, 423 (1990).  Instead, the Supreme Court has only stated, "it is

well settled that the Government may not be estopped on the same terms as any other litigant."

Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 60 (1984).  Until the

Supreme Court definitively states the government can be estopped, a state court's refusal to estop

the government is neither contrary to nor an unreasonable application of clearly established federal

law[.]

Second, petitioner does not satisfy the threshold requirements for maintaining an equitable

estoppel claim against the government.  Petitioner must show the government engaged in

"affirmative misconduct" and that the misconduct "will cause a serious injustice, and the public's

interest will not suffer undue damage by imposition of the liability."  Watkins v. United States

Army, 875 F.2d 699, 707 (9th Cir. 1989) (en banc) (internal quotations omitted); Danoff v. United

States, 324 F. Supp. 2d 1086, 1101 (C.D. Cal. 2004).  To commit "affirmative misconduct," the

government must engage in an "affirmative misrepresentation or affirmative concealment of a

material fact[.]" Carrillo v. United States, 5 F.3d 1302, 1306 (9th Cir. 1993); accord Meinhold v.

United States Dep't of Defense, 34 F.3d 1469, 1475 (9th Cir. 1994).  This misrepresentation or

concealment must rise to the level of "ongoing active misrepresentations" or "pervasive pattern of

false promises," rather than simply "an isolated act of providing misinformation[.]" Purcell v.

United States, 1 F.3d 932, 940 (9th Cir. 1993); S & M Inv. Co. v. Tahoe Reg'l Planning Agency,

---

[12] By asserting an independent ground of relief founded on petitioner's agreements with respondent, petitioner comes perilously close to asserting a cause of action for promissory estoppel. Petitioner cannot allege a cause of action against the government for promissory estoppel. Jablon v. United States, 657 F.2d 1064, 1069 (9th Cir. 1981); Rodriguez v. United States, No. CV 04-2312-PHX-RGS, 2007 WL 2022010, at *5 (D. Ariz. Jul. 10, 2007).  "[E]quitable estoppel is used to bar a party from raising a defense or objection it otherwise would have[.]" Jablon, 657 F.2d at 1068. Equitable estoppel does not support its own cause of action, but instead precludes the opposing party from asserting a defense to an independent cause of action.  Id.  Acknowledging that petitioner is proceeding pro se, the Court construes the petition in the light most favorable to petitioner.  Plausibly read, the petition argues respondent should be equitably estopped from asserting petitioner is statutorily ineligible for halftime credits.  (See Traverse, at 30 (arguing that petitioner "should be entitled to his halftime credits under promissory or equitable estoppel principles accordingly")).)

911 F.2d 324, 329 (9th Cir. 1990).  Affirmative misconduct does not include "the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation[.]" Suilt v. Schiltgen, 213 F.3d 449, 454 (9th Cir. 2000); Gengler v. United States ex rel. Dep't of Defense & Navy, 463 F. Supp. 2d 1085, 1109 (E.D. Cal. 2006).

Having reviewed the documents submitted in support of the petition, the Court finds petitioner has not shown that respondent engaged in affirmative misconduct.  None of the CDCR's "Inmate Job Description" forms promises behavioral credits.  (Am. Pet., Exhibit D, at 57-59.)  To the contrary, each form warns of the loss of "work time credit" if the inmate fails to meet performance expectations.  (Id.)  Petitioner also includes one page from what appears to be a multi-page document concerning the requirements of educational training programs.  (Am. Pet., Exhibit D, at 56.)  This document explains "[d]ay for day time credit is based on" attendance and participation.  (Id.)  Without any information concerning what this document might be or what its other pages might say, the Court finds this isolated statement—which really states the criteria for obtaining credit, rather than making any enforceable promises about the amount of available credit—is not an affirmative misrepresentation or concealment of material fact.  Nor does one sentence on one page of an incomplete document establish "ongoing active misrepresentations" or a "pervasive pattern of false promises."  Furthermore, any purported "misconduct" by respondent did not work a "serious injustice" against petitioner, who was statutorily foreclosed from obtaining the additional behavioral credits he seeks.

Third, petitioner's claim similarly fails because "estoppel against the government is unavailable where petitioner[] ha[s] not lost any rights to which [he] was entitled." Suilt, 213 F.3d at 454; accord Morgan v. Gonzales, — F.3d —, 2007 WL 2127707 (9th Cir. July 26, 2007).  As explained supra, California law did not entitle petitioner to post-sentence behavioral credits and instead limited petitioner to credits totaling 15% of his sentence.  Petitioner does not claim he was deprived of those 15% credits, i.e., the amount of credits to which California law entitles him.  Therefore, petitioner has not suffered a cognizable loss to justify government estoppel.

Fourth, even if petitioner established the prerequisites of government estoppel, petitioner's underlying equitable estoppel claim fails.  The four elements of an equitable estoppel claim are:

> (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct.

Lehman v. United States, 154 F.3d 1010, 1016-17 (9th Cir. 1998) (quoting United States v. Hemmen, 51 F.3d 883, 892 (9th Cir. 1995)); accord Heckler, 467 U.S. at 59.  Petitioner fails to establish the second and fourth elements.  Petitioner has no legal right to assert, based on a passing reference to day-for-day credit in one document, that respondent intended to make petitioner believe he was eligible for halftime credit.[13]  Also, petitioner cannot establish detrimental reliance because petitioner concedes he must participate in IWTIP, regardless of the level of credits that he earns. (Objections, at 5, 15).  The record refutes petitioner's claim that he must have earned behavioral credits because respondent took away behavioral credits.  Petitioner's legal status summary (LSS) sheets show that petitioner's balance of release credits never exceeded the amount of credits for which a violent felon would be eligible (i.e., 15% of his 9-year sentence).[14]  When respondent deducted "behavioral credits," respondent actually deducted from petitioner's balance of worktime credits for violations of prison rules and regulations.[15]  See Cal. Code Regs. tit. 15, §§ 3323, 3043.3 (establishing schedule for forfeiting behavioral or worktime credits for enumerated rule violations);  The use of the acronym "BCL" (for "behavioral credit loss") on the LSS does not mean respondent previously awarded behavioral credits to petitioner.[16]

For all these reasons, with respect to petitioner's estoppel claim, the Court rejects petitioner's objections, adopts the R&R, and denies this claim on the merits.

//

---

[13] The Court further finds that respondent did not actually intend to make petitioner believe he was eligible for halftime credit.

[14] Rounding to the nearest whole number, petitioner is eligible for 493 days of credit (i.e., 9 years * 365 days/year * 0.15).  Petitioner's December 1, 2003 LSS reflects a balance of 449 release credits, plus 37 days of Penal Code § 4019 credit, plus 7 days of post-sentence credit, for a total of 493 available credits.  (See Webster Decla., Exhibit D, at 7.)  Petitioner has received the credits to which he is entitled–no more, no less.

[15] Petitioner does not object to the magistrate judge's finding that respondent validly deducted credits because petitioner violated internal prison rules.  (R&R, at 16 & n.9.)

[16] The Court likewise rejects petitioner's argument that he must have earned "behavioral credits" merely because the Webster Declaration mentions that phrase in passing.

**C.     Equal Protection**

Petitioner claims respondent's system of awarding credits denies petitioner the equal protection of the laws.  The CDCR allegedly allows inmates convicted for offenses committed after 1982 (but not petitioner) to sign a § 2934 waiver and, therefore, obtain halftime credit for which they otherwise would not qualify.

The magistrate judge began by analyzing the validity of § 2933.1, which limits the availability of early release credits for violent felons, under equal-protection analysis.  The magistrate judge determined the correct legal standard was rational-basis review, rather than strict scrutiny, because "there is no per se constitutional right to early release from prison and prison inmates are not a suspect class."  (R&R, at 19 (citations omitted).)  Rational-basis review "requires only that the [statute's] classification rationally further a legitimate state interest."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  The magistrate judge found a rational basis for § 2933.1's disparate treatment of violent felons: the statute protected public peace, health, and safety by "safeguard[ing] the public from certain violent or dangerous offenders."  (R&R, at 19.)  Petitioner does not object to the R&R's conclusion that § 2933.1 has a rational basis.

The magistrate judge further analyzed petitioner's claim that similarly situated inmates (i.e., other violent felons subject to the 15% release credit cap of § 2933.1) signed § 2934 waivers and earned halftime credits.  The magistrate judge concluded that petitioner's claim failed because petitioner "failed to provide an example of a similarly situated inmate who ha[d] been given day-for-day credits."  (R&R, at 21.)  Although petitioner submitted LSS forms for other inmates receiving halftime credits, the magistrate judge reviewed these forms and found only one such inmate who might be similarly situated to petitioner: Thomas Joseph Lynch, who was convicted of a kidnapping (i.e., a violent felony) committed on May 2, 1995 (after § 2933.1 became effective).  Lynch's LSS was insufficient to establish an equal protection violation because petitioner included no explanation or argument why Lynch and petitioner were similarly situated.  Petitioner did not satisfy his burden of proof merely by providing Lynch's LSS.

In his objections, petitioner asserts his "main contention" is CDCR's issuance of § 2934 waivers to inmates who do not need such a waiver to obtain halftime credits under Penal Code §

2933.[17] (Objections, at 16-17.)  For purposes of an equal-protection claim, however, petitioner's contention is too broad.  When the underlying offense was committed after 1982, the § 2934 waiver has no legal effect.[18]  Therefore, whether a prisoner convicted of a post-1982 crime signs a § 2934 waiver, the result is the same: the prisoner is eligible for halftime work release credits under § 2933, unless the crime is a "violent felony" as defined by Penal Code § 667.5(c) and was committed after § 2933.1 became effective on September 21, 1994.  Section 2933.1's disparate treatment of violent felons survives rational-basis scrutiny, for the reasons stated by the magistrate judge and summarized supra.

If, however, the CDCR is allowing violent felons to sign § 2934 waivers and obtain halftime credits despite being convicted of crimes committed after § 2933.1 became effective, then petitioner may be able show that he is treated differently.  See McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999) (differential treatment is a required element of an equal protection claim).  Such prisoners are similarly situated to petitioner because they are all subject to the 15% release credits cap of § 2933.1.  In his objections, petitioner submits a declaration from Mr. Lynch, the inmate who, according to the magistrate judge, appeared to be similarly situated to petitioner.  Mr. Lynch represents, under penalty of perjury, that he signed a § 2934 waiver and received halftime credits under § 2933.  (Lynch Decla. ¶ 10.)  Mr. Lynch's LSS supports his representation, for it includes a notation that his credits were "auto vested" under Penal Code § 2934.  (Am. Pet, Exhibit C, at 49.)  Because Mr. Lynch was convicted of a kidnapping that took place on May 2, 1995 (see id.), he should have been subject to the 15% release credits cap of § 2933.1.  The LSS forms of

---

[17] As discussed supra, the purpose of the § 2934 waiver is limited to making prisoners who committed their crimes before 1983 eligible for halftime work credits under § 2933.  Without the waiver, these prisoners would be eligible for good conduct and worktime credits for only a third of their sentence.  Cal. Penal Code § 2931.

[18] Similarly, the phrase "CREDITS AUTO RE-VESTED PER PC 2934" is legally meaningless when it appears on the LSS of a prisoner convicted for an offense committed after 1982.  Respondent claims this phrase "is merely an indication that these inmates are eligible for the [halftime] credits."  (Memo. ISO Answer, at 7.)  The CDCR's reference to § 2934 is inexplicable when applied to inmates who committed post-1982 offenses, but such a reference does not establish an equal protection violation on its own.

Charles Clemans[19] and Richard Woerner[20], both submitted with petitioner's objections, seem to lend support to petitioner's argument of differential treatment because each violent felon was awarded release credits in excess of 15% of his sentence[21]. Despite signing multiple IWTIP waivers, petitioner was denied worktime credits beyond the 15% statutory ceiling.

Although respondent did not reply to petitioner's objections, the Court finds that supplemental briefing is necessary before adjudicating petitioner's equal-protection claim on the merits. A supplemental brief will enable respondent to reply to the Lynch declaration and additional LSS documents in petitioner's objections. This supplemental brief will also allow respondent to provide legal arguments concerning petitioner's equal-protection claim, in light of this most recent evidence of differential treatment. Specifically, the supplemental brief shall address the following issues:

(1)     Whether petitioner was treated differently than similarly situated violent felons when he was denied release credits beyond the 15% cap imposed by Penal Code § 2933.1.

(2)     Whether petitioner has proven that he was denied "equal protection" of the laws (even assuming that petitioner was treated differently from similarly situated violent felons in the awarding of release credits);

---

[19] Clemans was convicted of second-degree murder, a violent felony, committed on October 1, 1995 and was sentenced to twenty-eight years. (Objections, Exhibit A, at 1.) Under § 2933.1, Clemans is entitled to 1,533 days of credit (28 years * 365 days/year * 0.15). However, Clemans's June 28, 2005 LSS reflects a balance of 1,481 release credits, plus 53 days of Penal Code § 4019 credit, plus 5 days of post-sentence credit, for a total of 1,539 awarded credits. Therefore, Clemans's awarded credits seem to exceed (albeit by a small number) the credits for which he was statutorily eligible.

[20] Woerner was convicted of voluntary manslaughter, a violent felony, committed in September 1995 and was sentenced to thirteen years. (Objections, Exhibit A, at 5.) Rounding to the nearest whole number, under § 2933.1, Woerner is entitled to 712 days of credit (13 years * 365 days/year * 0.15). However, Woerner's June 28, 2005 LSS reflects that petitioner was assessed 1,081 credits (i.e., the sum of the numbers in the "Assess" column of the credit balance section of Woerner's LSS). When combined with the 113 days of Penal Code § 4019 credit and 30 days of post-sentence credit, Woerner was apparently awarded 1,224 credits. Therefore, Woerner's awarded credits exceed the credits for which he was statutorily eligible.

[21] The LSS statements of Stacy Blackburn and Michael Spencer do not support petitioner's equal-protection argument because both prisoners were convicted of offenses not enumerated as violent felonies in Penal Code § 667.5(c).

(3)     Whether petitioner meets the standard for obtaining § 2254 habeas relief on his equal-protection claim (even assuming that petitioner prevails on the merits of that claim).[22]

In the interests of fairness and justice, the Court will allow petitioner to file a surreply.

**CONCLUSION**

With respect to petitioner's claims for due process and estoppel, the Court **ADOPTS** the magistrate judge's Report and Recommendation, **REJECTS** petitioner's objections, and **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

With respect to petitioner's claim for equal protection, respondent **SHALL FILE** a reply brief by October 22, 2007.  Respondent's reply brief **SHALL NOT EXCEED** fifteen (15) pages, excluding exhibits.  Petitioner **SHALL FILE** a surreply brief by November 19, 2007.  Petitioner's surreply brief **SHALL NOT EXCEED** fifteen (15) pages, excluding exhibits.

**IT IS SO ORDERED.**

**DATED:  September 28, 2007**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[22] In addition, if respondent has ready access to the LSS documents of Lynch, Clemans, and Woerner that petitioner submitted as exhibits with his objections, the Court directs respondent to attach the best available copies of those documents as exhibits to the reply brief.  Portions of the copies submitted with petitioner's objections are so faint as to be almost unreadable.